CHARLES F. PREUSS (State Bar No. 45783)
THOMAS W. PULLIAM, JR. (State Bar No. 46322)
BENJAMIN J. HOLL (State Bar No. 200630)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendants
JOHNSON & JOHNSON, MCNEIL CONSUMER
HEALTHCARE, a Division of MCNEIL-PPC, INC.,
MCKESSON CORPORATION, and WAL-MART
STORES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS B. GAINES, a deceased minor child by and through his personal representative(s) and/or successor(s) in interest; DIANA L. GAINES, individually, as Executor of the Estate of Thomas B. Gaines, and as Thomas B. Gaines' personal representative and successor in interest; GARY D. GAINES, individually and as Thomas B. Gaines' personal representative and successor in interest; and THE ESTATE OF THOMAS B. GAINES,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON, a New Jersey corporation; MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, a Division of MCNEIL-PPC, INC., a New Jersey corporation; MCKESSON CORPORATION, a Delaware corporation; WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 07 5503<br><br>**NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) [DIVERSITY]** |

///

///

**TO THE CLERK OF THE COURT:**

Defendants Johnson & Johnson, McNeil Consumer Healthcare Division of McNeil-PPC, Inc. (erroneously sued as McNeil Consumer & Specialty Pharmaceuticals, a Division of McNeil-PPC, Inc.) ("McNeil"), and Wal-Mart Stores, Inc. ("Wal-Mart") (collectively "Removing Defendants") will remove and hereby do remove this action, *Gaines, et. al. v. Johnson & Johnson, et. al.* (Case No. CGC-06-457600, Superior Court, County of San Francisco, California) ("State Action"), to the United States District Court for the Northern District of California based on diversity of citizenship pursuant to 28 U.S.C. §1332. As detailed here, the Court should disregard the citizenship of defendant McKesson Corporation ("McKesson") because plaintiffs fraudulently joined that defendant.

## I.
## BACKGROUND

1. On November 3, 2006, the Southern California law firm Greene, Broillet, Panish & Wheeler, LLP filed a personal injury action in the Superior Court of California, County of San Francisco, entitled *Thomas B. Gaines, et al. v. Johnson & Johnson, et. al.*, Case Number CGC-06-457600. A copy of the Complaint in the State Action (the "Complaint") is attached as Exhibit A to the accompanying Declaration of Thomas W. Pulliam, Jr. ("Pulliam Dec.").

The plaintiffs in the action seek damages for the personal injury and death Thomas B. Gaines suffered after allegedly contracting Stevens-Johnson Syndrome, which plaintiffs claim was caused by Children's Motrin. (Complaint ¶¶ 12-14.) Plaintiffs are all residents of North Carolina. Plaintiffs allege causes of action for Strict Products Liability, Negligence, Breach of Warranty, and Wrongful Death against Johnson & Johnson, a New Jersey corporation with its principal place of business in New Jersey, McNeil, a New Jersey corporation with its principal place of business in Pennsylvania, and Wal-Mart, a Delaware corporation with its principal place of business in Arkansas. Although devoid of any factual allegations connecting McKesson to this lawsuit,

plaintiffs' complaint asserts those same claims against McKesson, a Delaware corporation with its principal place of business in San Francisco, California.

## II.
## BASIS FOR JURISDICTION

2. <u>Basis for Jurisdiction in this Court</u>. This Court has original jurisdiction over this action, and Removing Defendants may properly remove to this Court, because the amount in controversy exceeds $75,000, exclusive of interest and costs, there is diversity of citizenship of all named parties not fraudulently joined, and no defendant not fraudulently joined is a citizen of California. 28 U.S.C. §§ 1332, 1441(b).

    a. <u>Amount in Controversy</u>. The amount in controversy exceeds $75,000, exclusive of interests and costs. Plaintiffs pray in the Complaint for general damages for personal injuries in excess of $10,000,000, and economic and noneconomic damages resulting from the death of plaintiff in excess of $10,000,000. (Complaint at page 16.) Alternatively, a removing defendant can establish the amount in controversy by the allegations of a complaint. *See Conrad Associates v. Hartford Accident & Indemnity Company*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). It is facially apparent from the Complaint that the amount in controversy exceeds $75,000: Plaintiffs allege, *inter alia*, that Children's Motrin caused Thomas B. Gaines to suffer from Stevens-Johnson Syndrome, a very serious epidemiological disease, which allegedly ultimately led to his death. (Complaint ¶¶ 12-14.) Moreover, Plaintiffs allege punitive damages, and federal courts "routinely have held that unspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdictional threshold set out in 28 U.S.C. § 1332." *See Ross v. First Family Fin. Servs., Inc.*, 2002 U.S. Dist. LEXIS 23212 at *27 (N.D. Miss. Aug. 29, 2002) (citations omitted).

    b. <u>Citizenship of the Parties</u>. There is complete diversity of citizenship between those parties not fraudulently joined. As alleged in the Complaint, all plaintiffs are citizens of North Carolina. (Complaint ¶ 1.) At the time the state court action was filed and at the time of this removal, Johnson & Johnson was and is a corporation

existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. (Complaint ¶ 5; Pulliam Dec. ¶ 3.) At the time the state court action was filed and at the time of this removal, McNeil was and is a corporation existing under the laws of the State of New Jersey, with its principal place of business in Pennsylvania. (Complaint ¶ 6; Pulliam Dec. ¶ 4.) At the time the state court action was filed and at the time of this removal, Wal-Mart was and is a corporation existing under the laws of the State of Delaware, with its principal place of business in Arkansas. (Complaint ¶ 8; Pulliam Dec. ¶ 5.) Therefore, diversity of citizenship exists between plaintiffs and Johnson & Johnson, McNeil, and Wal-Mart pursuant to 28 U.S.C. § 1332.

   c. <u>Plaintiffs Fraudulently Joined McKesson.</u> The only other named defendant in this action, McKesson, is a Delaware corporation with its principal place of business in San Francisco, California. (Complaint ¶ 7; Pulliam Dec. ¶ 6.) McKesson has no potential liability to plaintiffs or to any of them. Rather, plaintiffs named McKesson as a "sham" defendant in an effort to prevent this case from being removed to federal court, as 28 U.S.C. § 1441(b) provides that removal on diversity grounds is not permitted where one of the defendants is a citizen of the State in which the action is brought.

  The party seeking removal has the burden of establishing federal jurisdiction. *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir. 1989). In determining the existence of removal jurisdiction, a court may ignore a "fraudulently joined" defendant. *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067-68 (9th Cir. 2001). A defendant is fraudulently joined if "the plaintiff fails to state a cause of action against the defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987). In determining whether joinder was fraudulent, a court "must examine whether there is any possibility that the plaintiff will be able to establish a cause of action against the party in question." *Adams v. FedEx Corp.,* 2005 U.S. Dist. Lexis 40408, *7 (N.D. Cal. 2005). In other words, "the defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. The*

*Prudential Insurance Co. Of America*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998).

In determining whether a defendant has been fraudulently joined, "federal courts in the Ninth Circuit may look beyond the pleadings and examine the factual record." *Bellecci v. GTE Sprint Communications Corp.*, 2003 U.S. Dist. Lexis 640, *10 (N.D. Cal. 2003); *See also Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049, 1053 (E.D. Cal. 2006) (When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."). However, while a fraudulent joinder claim may be resolved by piercing the pleadings, "whether or not a plaintiff may recover on the stated claims against the resident defendants does *not* include consideration of whether, with further discovery, the plaintiff may uncover a factual basis for its claims[.]" *Bellecci, supra*, 2003 U.S. Dist. Lexis 640 at *10 (original emphasis), citing *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002). If revealed that the joinder is fraudulent, the Court may dismiss the sham defendant. *Maffei, supra*, 412 F.Supp.2d at 1053. McKesson is so fraudulently joined here.

Plaintiffs claim that on or around September 28, 2004, Thomas B. Gaines was given Children's Motrin. (Complaint ¶ 11.) Plaintiffs purchased the Children's Motrin approximately 6 months before September 29, 2004 (sometime in March 2004) from a Wal-Mart Store located in Lincolnton, North Carolina ("Store 1209"). (Plaintiffs' Response to Defendants' First Set of Special Interrogatories, attached to Pulliam Dec. as Ex. D, at Interrogatories Nos. 1 and 5.) Plaintiffs claim that McKesson was and is the distributor of Children's Motrin to Wal-Mart. (Plaintiffs' Supplemental Response to Defendants' First Set of Special Interrogatories, attached to Pulliam Dec. as Ex. E, at Interrogatories Nos. 12-13 and 18-19.) Plaintiffs simply base this claim on three news articles. One article, from April 2002, stated that McKesson was honored as one of Wal-Mart's "Suppliers of the Year." (Pulliam Dec. ¶12, Ex. H.) Two November 2006 articles stated McKesson had renewed an agreement to be Wal-Mart's primary, but not exclusive, supplier of "branded pharmaceutical products," and that the relationship between

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\389227\1

McKesson and Wal-Mart began in 1988. (*Id.*) However, the articles do not provide any indication that McKesson sold any Children's Motrin to Wal-Mart generally, or Store 1209 in particular, during the relevant time.

However, the evidence demonstrates that the Children's Motrin plaintiffs purchased from Store 1209 in March 2004 did not come from McKesson. The evidence is undisputed that McKesson did not distribute Children's Motrin to Store 1209 during the period of January 1, 2004 through September 28, 2004. (McKesson's Response to Plaintiffs' Special Interrogatory No. 1, attached to Pulliam Dec. as Ex. F; Wal-Mart's Response to Plaintiffs' Special Interrogatory No. 1, attached to Pulliam Dec. as Ex. G.) Moreover, Beverly Taylor, the Wal-Mart Pharmacy Manager for the pharmacy at Store 1209, confirms that it is "extremely unlikely" that any Children's Motrin suspension product purchased before January 2004, from McKesson or anyone else, would have still been on the shelf and available for sale at Store 1209 in March 2004. (Declaration of Beverly Taylor, attached to Pulliam Dec. as Ex. I.)

Thus, plaintiffs purchased the Children's Motrin at issue in March 2004 from Store 1209, but the undeniable evidence establishes that Store 1209 did not receive any Children's Motrin from McKesson in 2004, and that it would be extremely unlikely that any Children's Motrin received from McKesson before January 2004 would still be on the shelf and available for sale in Store 1209 in March 2004. Accordingly, there is no possibility that plaintiffs can prove it is more likely than not that the Children's Motrin they purchased came from McKesson. Rather, plaintiffs named McKesson as a "sham" defendant in an effort to prevent this case from being removed to federal court pursuant to 28 U.S.C. § 1441(b). The Court should therefore disregard the citizenship of McKesson in determining the existence of removal jurisdiction under 28 U.S.C. § 1441(b).

        d.    <u>Citizenship of Doe Defendants</u>. Pursuant to 28 U.S.C. § 1441(a), for purposes of removal, the citizenship of defendants Does 1-100 must be disregarded because plaintiffs sued those defendants under fictitious names.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\389227\1

## III.
## REMOVAL TIMELY FILED

3. Pursuant to 28 USC § 1446(b), "a notice of removal may be filed within thirty days after receipt by the defendant...of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]" Additionally, 28 USC § 1446(b) provides that a case may not be removed on diversity grounds more than one year after the commencement of the action.

Upon receipt of the Declaration of Beverly Taylor, in which Ms. Taylor declared that it is "extremely unlikely" that any Children's Motrin purchased by Store 1209 before January 2004 would have still been on the shelves and available for sale in March 2004, Removing Defendants were able to determine that McKesson is a sham defendant and that, therefore, this case is removable. Removing Defendants' counsel received the Declaration of Beverly Taylor on October 9, 2007 (Pulliam Dec. ¶ 13), and the notice of removal was filed within 30 days thereafter. Accordingly, the notice of removal was timely filed by Removing Defendants. In addition, the case is not being removed more than one year after the commencement of the action, as plaintiffs filed this case in state court on November 3, 2006.

## IV.
## CONSENT TO REMOVAL

4. The only other named defendant, McKesson, was fraudulently joined, and its consent is therefore not required for removal; notwithstanding, McKesson consents to Removing Defendants' removal of this action to this Court. (Pulliam Dec. ¶ 6.)

## V.
## STATE COURT WITHIN THE COURT'S JURISDICTION

5. The San Francisco County, California Superior Court, from which Removing Defendants remove this action, is within this Court's jurisdiction.

## VI.
## STATE COURT PLEADINGS

6. Copies of the state court pleadings known to Removing Defendants to have

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\389227\1

been filed in this action are collectively attached to the Pulliam Dec. as Exhibits A-C.

## VII.
## FILING AND SERVICE OF NOTICE OF REMOVAL AND REMOVAL

7.  Removing Defendants will file a notice of the filing of this Notice of Removal and Removal in the San Francisco County Superior Court and will serve plaintiffs' counsel with a copy. (Pulliam Dec. ¶ 7.)

WHEREFORE, Removing Defendants hereby remove San Francisco County Superior Court Case No. CGC-06-457600 to this Court, pursuant to 28 U.S.C. § 1441.

Dated: October 29, 2007

Respectfully submitted,
DRINKER BIDDLE & REATH LLP

*/s/ Thomas W. Pulliam, Jr.*
THOMAS W. PULLIAM, JR.

Attorneys for Defendants
JOHNSON & JOHNSON, MCNEIL CONSUMER HEALTHCARE, a Division of MCNEIL-PPC, INC., MCKESSON CORPORATION, and WAL-MART STORES, INC.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\389227\1   NOTICE OF REMOVAL AND REMOVAL                                  CASE NO.