# EXHIBIT E

1

**GREENE BROILLET & WHEELER, LLP**
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

2

3

BROWNE GREENE, State Bar No. 38441

4

MICHAEL J. AVENATTI, State Bar No. 206929

5

Attorneys for _____ Plaintiff _____

6

7

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

FOR THE COUNTY OF SAN FRANCISCO

10

11

THOMAS B. GAINES, etc., et al,

CASE NO.  CGC -06-457600

12

Plaintiffs,

**PLAINTIFFS' SUPPLEMENTAL
RESPONSES TO SPECIAL
INTERROGATORIES, SET ONE**

13

vs.

14

JOHNSON & JOHNSON, et al.,

15

Defendants.

Complaint Filed: November 3, 2006

16

17

RESPONDING PARTY:          Plaintiffs THOMAS B. GAINES, et al.

18

PROPOUNDING PARTY:      Defendants JOHNSON & JOHNSON, et al.

19

SET NO:                               ONE (1)

20

21

TO DEFENDANTS JOHNSON & JOHNSON,  et al. AND TO ITS ATTORNEYS OF RECORD

22

HEREIN:

23

24

          COME NOW plaintiffs, pursuant to California Code of Civil Procedure, section 2030,

25

and hereby provide the following responses, without prejudice to further discovery.

26

27

28

-1-
Plaintiff's Supplemental Response to Special Interrogatories, Set One

179E.6C

## GENERAL OBJECTIONS

A.      Plaintiffs object to all of the individual Interrogatories to the extent they call for information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. To the extent that the Interrogatories call for information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or protection, Plaintiffs hereby claim such privilege and invokes such protection. The fact that Plaintiffs do not specifically object to an individual Interrogatory on the ground that it seeks such privileged or protected information shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or protection.

B.      Plaintiffs object to all of the individual Interrogatories to the extent they purport to impose upon Plaintiffs the burden of furnishing information that is not available to it or that is equally or more readily available to the defendants.

C.      Plaintiffs object to all of the individual Interrogatories to the extent they seek information that is not relevant to the subject matter involved in the pending action or reasonably calculated to lead to the discovery of admissible evidence.

D.      Plaintiffs object to the Interrogatories, and to each Interrogatory set forth therein, to the extent that they seek the discovery of sensitive and confidential personal and financial information.

E.      Plaintiffs object to each and every Interrogatory herein to the extent that it is overly broad, unduly burdensome, and oppressive.

F.      Plaintiffs object to each and every Interrogatory herein to the extent that it is vague, ambiguous, or unintelligible.

G.      Plaintiffs object to these Interrogatories on the grounds and to the extent that they contain multiple subparts in violation of the Code and California law.

H.      The foregoing objections and qualifications apply to the responses contained herein and are incorporated by reference to the extent applicable to the specific responses set forth below as though fully set forth therein. The failure to mention any of the foregoing objections and

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.6C

1  qualifications in the specific responses set forth below shall not be deemed a waiver of such objection

2  or qualification.

3

4  **SUPPLEMENTAL RESPONSES TO SPECIAL INTERROGATORIES**

5

6  **SPECIAL INTERROGATORY NO. 5:**

7         State the date the CHILDREN'S MOTRIN was sold to YOU.

8  **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

9         Plaintiffs do not know the date the CHILDREN'S MOTRIN was sold to them, but their

10  best estimate is that it was approximately 6 months before September 29, 2004.

11        Discovery is ongoing and plaintiffs reserve the right to supplement this response.

12  **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

13        Plaintiffs do not know the date the CHILDREN'S MOTRIN was sold to them, but their

14  best estimate is that it was approximately 6 months before September 29, 2004. This estimate is based

15  on plaintiffs' recollection.

16        Discovery is ongoing and plaintiffs reserve the right to supplement this response.

17  **SPECIAL INTERROGATORY NO. 12:**

18        Set forth all facts upon which YOU rely for YOUR contention that MCKESSON is a

19  proper party to this lawsuit.

20  **PLAINTIFFS' ORIGINAL RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

21        Objection: This interrogatory seeks plaintiffs' counsel's work product, legal reasoning,

22  theory, and/or statutory basis supporting a factual contention.

23        Without waiving this objection, plaintiffs state that MCKESSON was and is the

24  distributer of CHILDREN'S MOTRIN to WAL-MART.

25        Discovery is ongoing and plaintiffs reserve the right to supplement this response.

26  ///

27  ///

28  ///

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.6C

1    **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

2    Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response

3    to this interrogatory.

4    Without waiving this objection, plaintiffs supplement their response to this

5    interrogatory as follows: MCKESSON was and is the distributor of CHILDREN'S MOTRIN to WAL-

6    MART. This fact was verified by MCKESSON itself in November of 2006, when MCKESSON

7    announced through the media that it had renewed its "long-standing supply agreement with Wal-Mart

8    Stores, Inc.," maintaining its standing as "Wal-Mart's primary supplier of branded pharmaceutical

9    products." This press release went on to note that MCKESSON's relationship with WAL-MART

10    began in 1988.

11    CHILDREN'S MOTRIN is a brand name pharmaceutical. Plaintiffs purchased the

12    CHILDREN'S MOTRIN in question at WAL-MART in 2004, which clearly falls into the time frame

13    in which MCKESSON was the primary supplier of brand name pharmaceuticals to WAL-MART.

14    Discovery is ongoing and plaintiffs reserve the right to supplement this response.

15

16    **SPECIAL INTERROGATORY NO. 13:**

17    Describe all EVIDENCE supporting YOUR contention that MCKESSON is a proper

18    party to this lawsuit.

19    **PLAINTIFFS' ORIGINAL RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

20    Objection: This interrogatory seeks plaintiff's counsel's work product, legal reasoning,

21    theory, and/or statutory basis supporting a factual contention.

22    Without waiving this objection, plaintiff states that MCKESSON was and is the

23    distributer of CHILDREN'S MOTRIN to WAL-MART.

24    Discovery is ongoing and plaintiffs reserve the right to supplement this response.

25    ///

26    ///

27    ///

28    ///

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.6C

**GREENE BROILLET & WHEELER, LLP**
**P.O. BOX 2131**
**SANTA MONICA, CA 90407-2131**

1  **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

2         Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response

3  to this interrogatory.

4         Without waiving this objection, plaintiffs supplement their response to this

5  interrogatory as follows: MCKESSON was and is the distributor of CHILDREN'S MOTRIN to WAL-

6  MART. This fact was verified by MCKESSON itself in November of 2006, when MCKESSON

7  announced through the media that it had renewed its "long-standing supply agreement with Wal-Mart

8  Stores, Inc.," maintaining its standing as "Wal-Mart's primary supplier of branded pharmaceutical

9  products." This press release went on to note that MCKESSON's relationship with WAL-MART

10  began in 1988.

11         CHILDREN'S MOTRIN is a brand name pharmaceutical. Plaintiffs purchased the

12  CHILDREN'S MOTRIN in question at WAL-MART in 2004, which clearly falls into the time frame

13  in which MCKESSON was the primary supplier of brand name pharmaceuticals to WAL-MART.

14         Discovery is ongoing and plaintiffs reserve the right to supplement this response.

15

16  **SPECIAL INTERROGATORY NO. 18:**

17         Set forth the facts upon which YOU rely for YOUR contention that the CHILDREN'S

18  MOTRIN was sold by MCKESSON.

19  **PLAINTIFFS' ORIGINAL RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

20         Objection: This interrogatory seeks plaintiffs' counsel's work product, legal reasoning,

21  theory, and/or statutory basis supporting a factual contention.

22         Without waiving this objection, plaintiffs state that MCKESSON was and is the

23  distributer of CHILDREN'S MOTRIN to WAL-MART.

24         Discovery is ongoing and plaintiffs reserve the right to supplement this response.

25  ///

26  ///

27  ///

28  ///

179E.6C

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

1

2          Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response

3   to this interrogatory.

4          Without waiving this objection, plaintiffs supplement their response to this

5   interrogatory as follows: MCKESSON was and is the distributor of CHILDREN'S MOTRIN to WAL-

6   MART. This fact was verified by MCKESSON itself in November of 2006, when MCKESSON

7   announced through the media that it had renewed its "long-standing supply agreement with Wal-Mart

8   Stores, Inc.," maintaining its standing as "Wal-Mart's primary supplier of branded pharmaceutical

9   products." This press release went on to note that MCKESSON's relationship with WAL-MART

10  began in 1988. CHILDREN'S MOTRIN is a brand name pharmaceutical.

11         Discovery is ongoing and plaintiffs reserve the right to supplement this response.

12

**SPECIAL INTERROGATORY NO. 19:**

13

14         Describe all EVIDENCE supporting YOUR contention that the CHILDREN'S

15  MOTRIN was sold by MCKESSON.

**PLAINTIFFS' ORIGINAL RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

16

17         Objection: This interrogatory seeks plaintiffs' counsel's work product, legal reasoning,

18  theory, and/or statutory basis supporting a factual contention.

19         Without waiving this objection, plaintiffs state that MCKESSON was and is the

20  distributer of CHILDREN'S MOTRIN to WAL-MART.

21         Discovery is ongoing and plaintiffs reserve the right to supplement this response.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

22

23         Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response

24  to this interrogatory.

25         Without waiving this objection, plaintiffs supplement their response to this

26  interrogatory as follows: MCKESSON was and is the distributor of CHILDREN'S MOTRIN to WAL-

27  MART. This fact was verified by MCKESSON itself in November of 2006, when MCKESSON

28  announced through the media that it had renewed its "long-standing supply agreement with Wal-Mart

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.6C

-6-

1    Stores, Inc.," maintaining its standing as "Wal-Mart's primary supplier of branded pharmaceutical

2    products." This press release went on to note that MCKESSON's relationship with WAL-MART

3    began in 1988. CHILDREN'S MOTRIN is a brand name pharmaceutical.

4            Discovery is ongoing and plaintiffs reserve the right to supplement this response.

5

6

7    DATED:  May 3, 2007

8            GREENE BROILLET & WHEELER, LLP

9                                                            for
                                                             MJA

10           MICHAEL J. AVENATTI
             Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179B.6C