# EXHIBIT H

GREENE BROILLET & WHEELER, LLP
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

BROWNE GREENE, State Bar No. 38441
MICHAEL J. AVENATTI, State Bar No. 206929

Attorneys for ____ Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| THOMAS B. GAINES, etc., et al, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> JOHNSON & JOHNSON, et al., ) <br> ) <br> Defendants. ) <br> ) | CASE NO.  CGC -06-457600 <br><br> **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION, SET ONE** <br><br> Complaint Filed: November 3, 2006 |

RESPONDING PARTY:          Plaintiffs THOMAS B. GAINES, et al.

PROPOUNDING PARTY:      Defendants JOHNSON & JOHNSON, et al.

SET NO:                              ONE (1)

TO DEFENDANT JOHNSON & JOHNSON, AND TO ITS ATTORNEYS OF RECORD HEREIN:

Plaintiffs THOMAS B. GAINES, et al. hereby supplementally respond to defendant's REQUEST FOR PRODUCTION, SET ONE (1) as follows:

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

A.      Plaintiffs object to all of the individual Requests to the extent they call for documents/information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. To the extent that the Requests call for

-1-
Plaintiffs' Supplemental Response to Request for Production, Set One

179E.6D

document/information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or protection, Plaintiffs hereby claim such privilege and invokes such protection. The fact that Plaintiffs do not specifically object to an individual request on the ground that it seeks such privileged or protected documents/information shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or protection.

B. Plaintiffs object to all of the individual Requests to the extent they purport to impose upon Plaintiffs the burden of furnishing documents/information that is not available to it or that is equally or more readily available to the Defendants. Plaintiffs further object to all of the Requests to the extent they purport to require Plaintiffs to re-produce documents/information that Plaintiffs have already produced in this litigation.

C. Plaintiffs object to all of the individual Requests to the extent they seek documents/information that is not relevant to the subject matter involved in the pending action or reasonably calculated to lead to the discovery of admissible evidence.

D. Plaintiffs object to the Requests, and to each Request set forth therein, to the extent that they seek the discovery of sensitive and confidential personal and financial documents/information.

E. Plaintiffs object to each and every Request herein to the extent that it is overly broad, unduly burdensome, and oppressive.

F. Plaintiffs object to each and every Request herein to the extent that it is vague, ambiguous, or unintelligible.

G. Plaintiffs object to these Requests and each Request on the grounds that they are premature and are improper in that they seek to obtain "all documents" relating to Plaintiffs' contentions. Discovery and investigation into the subject matter of this action have just begun.

H. Plaintiffs object to these Requests on the grounds and to the extent that they are duplicative of each other and/or are duplicative of prior requests for production served by Defendants.

-2-
Plaintiffs' Supplemental Response to Request for Production, Set One

I. Plaintiffs object to all of the individual Requests to the extent they seek to ascertain documents/information and other data which a consultant expert witness has provided Plaintiffs in the preparation of this case pursuant to CCP §2034, and, as such, is therefore in violation of the attorney work product privilege.

J. Plaintiffs object to all of the individual Requests to the extent they seek to ascertain the anticipated testimony of consultant/expert witnesses pursuant to CCP §2034, and, as such, is therefore in violation of the attorney work product privilege and seeks a premature expert opinion.

K. Except for explicit facts stated herein, no incidental and/or implied admissions by Plaintiffs are intended by or in any of these responses. The fact that Plaintiffs have responded to a Request should not be taken as an admission that Plaintiffs accept or admit the existence of any facts set forth or assumed by such Request. The fact that Plaintiffs have responded in part to a Request contained herein is not intended and shall not be construed to be a waiver by Plaintiffs of all or any part of any objection to any Request.

L. Plaintiffs are still in the process of locating, collecting, reviewing and analyzing items and information as referred to in Defendants' Requests and Plaintiffs are determining whether or not any of said items fall within the scope of said Requests. Accordingly, if in a response to any Request Plaintiffs indicate that they will produce and permit the inspection and/or copying of any items, said response should not be deemed to be and is not an admission that there are any such items in existence, but rather only an indication that if any such items exist, Plaintiffs will produce them and permit them to be inspected and copied.

M. Plaintiffs have not yet completed discovery and investigation for analysis of matters relating to this case and have not yet completed discovery in preparation for trial. Consequently, such documents as will be produced in response to Defendants' Requests shall be produced without prejudice to Plaintiffs' rights to produce any subsequently discovered documents.

N. As to any response with respect to which Plaintiffs initially assert an objection, and then, without waiving said objection, provide documents/information, the providing

-3-
Plaintiffs' Supplemental Response to Request for Production, Set One

of said documents/information is solely for the purposes of aiding discovery and demonstrating plaintiffs' good-faith efforts to supply information.

O.  The foregoing objections and qualifications apply to the responses contained herein and are incorporated by reference to the extent applicable to the specific responses set forth below as though fully set forth therein. The failure to mention any of the foregoing objections and qualifications in the specific responses set forth below shall not be deemed a waiver of such objection or qualification.

### SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS that evidence the distribution of the CHILDREN'S MOTRIN by a DISTRIBUTOR.

**PLAINTIFFS' ORIGINAL RESPONSE TO REQUEST NO. 3:**

Objection: This request seeks plaintiffs' counsel's work product, legal reasoning, theory, and/or statutory basis supporting a factual contention. Further, all responsive DOCUMENTS should be in the possession, custody or control of Defendants.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 3:**

Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response to this interrogatory.

Without waiving this objection, plaintiffs supplement their response to this interrogatory as follows: Plaintiffs produce herewith three press releases, one from April of 2002 and two from November of 2006, all of which affirm that MCKESSON is, and has been at least since 2002, WAL-MART'S primary supplier of pharmaceutical products. CHILDREN'S MOTRIN is a brand name pharmaceutical.

Plaintiffs are not currently withholding any DOCUMENTS based upon any claim of privilege. When and if any privileged DOCUMENTS are identified by Plaintiffs, a privilege log will be produced.

-4-
Plaintiffs' Supplemental Response to Request for Production, Set One

179B.6D

1  Discovery is ongoing and plaintiffs reserve the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS supporting YOUR contention that MCKESSON is a proper party to this lawsuit.

**PLAINTIFFS' ORIGINAL RESPONSE TO REQUEST NO. 9:**

Objection: This request seeks plaintiffs' counsel's work product, legal reasoning, theory, and/or statutory basis supporting a factual contention. Further, all responsive DOCUMENTS should be in the possession, custody or control of Defendants.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 9:**

Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response to this interrogatory.

Without waiving this objection, plaintiffs supplement their response to this interrogatory as follows: Plaintiffs produce herewith three press releases, one from April of 2002 and two from November of 2006, all of which affirm that MCKESSON is, and has been at least since 2002, WAL-MART'S primary supplier of pharmaceutical products. CHILDREN'S MOTRIN is a brand name pharmaceutical.

Plaintiffs are not currently withholding any DOCUMENTS based upon any claim of privilege. When and if any privileged DOCUMENTS are identified by Plaintiffs, a privilege log will be produced.

Discovery is ongoing and plaintiffs reserve the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS supporting YOUR contention that the CHILDREN'S MOTRIN was sold by MCKESSON.

///
///
///

**PLAINTIFFS' ORIGINAL RESPONSE TO REQUEST NO. 12:**

Objection: This interrogatory seeks plaintiffs' counsel's work product, legal reasoning, theory, and/or statutory basis supporting a factual contention. Further, all responsive DOCUMENTS should be in the possession, custody or control of Defendants.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 12:**

Plaintiffs incorporate by reference the objection as stated in plaintiffs' original response to this interrogatory.

Without waiving this objection, plaintiffs supplement their response to this interrogatory as follows: Plaintiffs produce herewith three press releases, one from April of 2002 and two from November of 2006, all of which affirm that MCKESSON is, and has been at least since 2002, WAL-MART'S primary supplier of pharmaceutical products. CHILDREN'S MOTRIN is a brand name pharmaceutical.

Plaintiffs are not currently withholding any DOCUMENTS based upon any claim of privilege. When and if any privileged DOCUMENTS are identified by Plaintiffs, a privilege log will be produced.

Discovery is ongoing and plaintiffs reserve the right to supplement this response.

DATED: May 3, 2007

GREENE BROILLET & WHEELER, LLP

MICHAEL J. AVENATTI
Attorney for Plaintiff

-6-
Plaintiffs' Supplemental Response to Request for Production, Set One

**SFGate.com**

# McKesson, Wal-Mart extend pact
## San Francisco company will remain retailer's main supplier of branded pharmaceuticals

Bernadette Tansey, Chronicle Staff Writer
Saturday, November 25, 2006

McKesson Corp., the largest distributor of pharmaceuticals in the United States, said Friday it has renewed a long-standing supply agreement with Wal-Mart Stores, Inc., the world's largest retailer.

The San Francisco company said the agreement maintains its standing as Wal-Mart's primary supplier of branded pharmaceutical products. Details of the agreement were not disclosed, including the terms under which McKesson might continue to supply generic drugs. Wal-Mart recently introduced a price-slashing campaign offering commonly prescribed generics at $4 for a month's supply.

Target Corp. announced a similar discount program for generic drugs on Monday. Target had renewed its supply contract with McKesson during the quarter ending Sept. 30. Representatives of McKesson, Wal-Mart and Target were not available to discuss the impact of the price-cutting campaigns on McKesson and other distributors of generic drugs.

Wal-Mart, based in Bentonville, Ark., estimates that the 331 drugs now covered by its discount program represent more than 25 percent of the prescriptions filled at its pharmacies nationwide. The company recently said the program is offered at 3,009 pharmacies in 38 states.

In its earnings reports this year, McKesson has pointed to its generics business as a source of increasing profit. McKesson, the largest distributor of generic drugs in North America, said it moves quickly to make generics available to customers once the patents on brand-name drugs expire.

Because patents are expiring on so many expensive drugs, the growth rate of revenue from pharmaceutical distribution is dropping, it said. But profit margins from the increased sales of generic drugs should be higher, McKesson predicted in a May 4 report.

The company reported revenue of $88.1 billion and net income of $751 million for its 2006 fiscal year, which ended March 31. On Oct. 31, McKesson raised its estimate of 2007 earnings per share to $2.65 to $2.75.

McKesson, whose relationship with Wal-Mart began in 1988, will continue to supply Wal-Mart's mail-order facility and warehouses. It will also continue to provide repackaging services through its RxPak unit.

McKesson shares gained 36 cents to close at $48.18 on Friday.

*E-mail Bernadette Tansey at btansey@sfchronicle.com.*

http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2006/11/25/BUGKOMHBI81.DTL

This article appeared on page C - 1 of the San Francisco Chronicle

## McKesson Renews Pharmaceutical Distribution Agreement With Wal-Mart
November 24, 2006

SAN FRANCISCO—(BUSINESS WIRE)—McKesson Corporation (NYSE:MCK), the nation's largest pharmaceutical distributor, announced today that it has renewed its comprehensive supply agreement with Wal-Mart Stores, Inc., the largest retailer in the world.

The agreement extends the companies' relationship, which dates back to 1988, and maintains McKesson as the primary supplier of brand pharmaceutical products for Wal-Mart stores across the United States. In addition, McKesson will continue to be a supplier to Wal-Mart's mail order facility and warehouses. McKesson will also continue to provide repackaging services through its RxPak business.

"We are pleased to extend our longstanding and extensive relationship with Wal-Mart," said John Figueroa, President of McKesson Pharmaceuticals, the company's domestic pharmaceutical distribution business unit.

### Risk Factors

Except for historical information contained in this press release, matters discussed may constitute "forward-looking statements", within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934, that involve risks and uncertainties that could cause actual results to differ materially from those projected, anticipated or implied. These statements may be identified by their use of forward-looking terminology such as "believes", "expects", "anticipates", "may", "should", "seeks", "approximates", "intends", "plans", "estimates" or the negative of these words or other comparable terminology. The most significant of these risks and uncertainties are described in the company's Form 10-K, Form 10-Q and Form 8-K reports filed with the Securities and Exchange Commission and include, but are not limited to: adverse resolution of pending shareholder litigation regarding the 1999 restatement of our historical financial statements; the changing U.S. healthcare environment, including changes in government regulations and the impact of potential future mandated benefits; competition; changes in private and governmental reimbursement or in the delivery systems for healthcare products and services; governmental and manufacturers' efforts to regulate or control the pharmaceutical supply chain; changes in pharmaceutical and medical-surgical manufacturers' pricing, selling, inventory, distribution or supply policies or practices; changes in the availability or pricing of generic drugs; changes in customer mix; substantial defaults in payment or a material reduction in purchases by large customers; challenges in integrating and implementing the company's internally used or externally sold software and software systems, or the slowing or deferral of demand or extension of the sales cycle for external software products; continued access to third-party licenses for software and the patent positions of the company's proprietary software; the company's ability to meet performance requirements in its disease management programs; the adequacy of insurance to cover liability or loss claims; new or revised tax legislation; foreign currency fluctuations or disruptions to foreign operations; the company's ability to successfully identify, consummate and integrate strategic acquisitions; changes in generally accepted accounting principles (GAAP) and general economic conditions. The reader should not place undue reliance on forward-looking statements, which speak only as of the date they are made. The company assumes no obligation to update or revise any such statements, whether as a result of new information or otherwise.

### About McKesson

McKesson Corporation (NYSE:MCK) is a Fortune 16 healthcare services and information technology company dedicated to helping its customers deliver high-quality healthcare by reducing costs, streamlining processes and improving the quality and safety of patient care. Over the course of its 173-year history, McKesson has grown by providing pharmaceutical and medical-surgical supply management across the spectrum of care; healthcare information technology for hospitals, physicians, homecare and payors; hospital and retail pharmacy automation; and services for manufacturers and payors designed to improve outcomes for patients. For more information, visit us at www.mckesson.com.

### About Wal-Mart Stores, Inc.

Wal-Mart Stores, Inc. operates Wal-Mart discount stores, supercenters, Neighborhood Markets and Sam's Club locations in the United States. The Company operates in Argentina, Brazil, Canada, China, Costa Rica, El Salvador, Guatemala, Honduras, Japan, Mexico, Nicaragua, Puerto Rico and the United Kingdom. The Company's securities are listed on the New York Stock Exchange and NYSE Arca, formerly the Pacific Stock Exchange, under the symbol WMT.

More information about Wal-Mart can be found by visiting www.walmartfacts.com. Online merchandise sales are available at www.walmart.com.

Home > About Us > Newsroom > Press Releases > 2002

## McKesson Named a Wal-Mart Supplier of the Year
April 15, 2002

Business Editors/Health Writers

SAN FRANCISCO--(BUSINESS WIRE)--April 15, 2002--McKesson Corporation announced today that it has been honored as one of Wal-Mart's "Suppliers of the Year." McKesson was recently honored as Wal-Mart's "Supplier of the Quarter" for improvements in the areas of on-time shipping, performance, innovative programs and partnership.

In addition to the "Supplier of the Year" honor, McKesson was one of 10 suppliers out of more than 1,000 doing business with Wal-Mart that achieved and was recognized for surpassing $1 billion in 2001.

"The Supplier of the Year honor is reserved for selected suppliers. It singles out the best of the best," said Frank Segrave, vice president of pharmacy for Wal-Mart.

"We are honored to be recognized as one of Wal-Mart's key suppliers," remarked Paul Julian, president, McKesson Supply Solutions. "Our innovation, depth of resources, and commitment of our employees have all contributed to this achievement."

McKesson Corporation is a leading provider of innovative solutions in supply, information and care management through advanced technologies and services that deliver greater return on investment and better patient outcomes for providers, payors, employers and manufacturers. With revenues of $42 billion for the fiscal year ended March 31, 2001, McKesson ranks #31 in the 2001 Fortune 500. More information about McKesson is available on the company's Website at: www.mckesson.com.