1  CHARLES F. PREUSS (State Bar No. 45783)
   THOMAS W. PULLIAM, JR. (State Bar No. 46322)
2  BENJAMIN J. HOLL (State Bar No. 200630)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California 94105-2235
4  Telephone: (415) 591-7500
   Facsimile: (415) 591-7510
5
   Attorneys for Defendants
6  JOHNSON & JOHNSON, MCNEIL CONSUMER
   HEALTHCARE, a Division of MCNEIL-PPC, INC.,
7  MCKESSON CORPORATION, and WAL-MART
   STORES, INC.
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12  THOMAS B. GAINES, a deceased minor        Case No. CV 07-05503 PJH
    child by and through his personal
13  representative(s) and/or successor(s) in   DEFENDANTS' OPPOSITION TO
    interest; DIANA L. GAINES, individually,   PLAINTIFFS' MOTION TO REMAND
14  as Executor of the Estate of Thomas B.
    Gaines, and as Thomas B. Gaines' personal
15  representative and successor in interest;   Time:      9:00 a.m.
    GARY D. GAINES, individually and as        Date:      January 16, 2008
16  Thomas B. Gaines' personal representative   Location:  Court Room 3
    and successor in interest; and THE
17  ESTATE OF THOMAS B. GAINES,

18                    Plaintiffs,              Complaint Filed: November 3, 2006

19        v.

20  JOHNSON & JOHNSON, a New Jersey
    corporation; MCNEIL CONSUMER &
21  SPECIALTY PHARMACEUTICALS, a
    Division of MCNEIL-PPC, INC., a New
22  Jersey corporation; MCKESSON
    CORPORATION, a Delaware corporation;
23  WAL-MART STORES, INC., a Delaware
    corporation; and DOES 1 through 100,
24  inclusive,

25                    Defendants.

26  ///

27  ///

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1

## **TABLE OF CONTENTS**

2    I. INTRODUCTION ................................................................................................................1

3    II. PROCEDURAL POSTURE ...............................................................................................1

4          A.    Plaintiffs' State Court Case ........................................................................1

5          B.    Defendants' Removal ..................................................................................3

6    III. LEGAL ARGUMENT .......................................................................................................4

7          A.    Defendants' Removal Was Timely ..............................................................4

8          B.    Remand Is Not Warranted Because Plaintiffs Fraudulently
9                Joined McKesson ........................................................................................7

10               1.    Controlling Legal Standards ............................................................7

11               2.    Defendants Met Their Removal Burden By
                        Establishing That McKesson Has No Connection To
12                       Plaintiffs' Controversy ...................................................................8

13   IV. CONCLUSION ...............................................................................................................10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA. 94105

SF\1\392964\1    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND    CASE NO. CV 07-05503 PJH

1

## TABLE OF AUTHORITIES

2
### Cases

3
*Adams v. FedEx Corp.*, 2005 U.S. Dist. Lexis 40408 (N.D. Cal. 2005) .........................3, 8

4
*Attorneys Trust v. Videotape Computer Prod., Inc.*, 93 F.3d 593 (9th Cir.
5
    1996) ...............................................................................................................................1

6
*Bellecci v. GTE Sprint Communications Corp.*, 2003 U.S. Dist. Lexis 640
    (N.D. Cal. 2003).............................................................................................................8

7
*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006)...................................4

8
*Garcia v. Joseph Vince Co.*, 84 Cal.App.3d 868 (1978) ...................................................8

9
*Gasnick v. State Farm Ins. Co.*, 825 F.Supp. 245 (E.D. Cal. 1992). ..................................8

10
*Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999).................................................8

11
*Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689 (9th Cir. 2005)...........................4

12
*Lively v. Wild Oats Markets, Inc.,* 456 F.3d 933 (9th Cir. 2006) ......................................7

13
*Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049 (E.D. Cal. 2006)...........7, 8, 10

14
*McCabe v. Gen. Goods Corp.*, 811 F.2d 1336 (9th Cir. 1987)..........................................7

15
*Rico-Chinn v. Prudential Ins. Co. of Am.*, 2005 U.S. Dist. Lexis 23132
16
    (N.D. Cal. 2005)...........................................................................................................6

17
*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998) .............................................8

18
*Spencer v. United States Dist. Court for the N. Dist. of California*, 393 F.3d
    867 (9th Cir. 2004)........................................................................................................7

19
*Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) ...........................................7

20
### Statutes

21
Federal Rule of Civil Procedure 21 ....................................................................................8

22
United States Code, Chapter 28, § 1332(a)........................................................................3

23
United States Code, Chapter 28, § 1441 ....................................................................1, 3, 7

24
United States Code, Chapter 28, § 1441(a).......................................................................7

25
United States Code, Chapter 28, § 1441(b) ...................................................................3, 7

26
United States Code, Chapter 28, § 1446(b) ...................................................................4, 6

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1

**<u>Other Authorities</u>**

2

Erwin Chemerinsky, *Federal Jurisdiction* § 5.5 (4th ed. 2003) ..........................................7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1  Defendants Johnson & Johnson, McNeil Consumer Healthcare Division of

2  McNeil-PPC, Inc. (erroneously sued as McNeil Consumer & Specialty Pharmaceuticals,

3  a Division of McNeil-PPC, Inc.) ("McNeil"), Wal-Mart Stores, Inc. ("Wal-Mart"), and

4  McKesson Corporation ("McKesson") (collectively, "Defendants") respond to Plaintiffs'

5  Motion to Remand, as follows:

6
## I.
## INTRODUCTION
7
8  Plaintiffs' joinder of McKesson as a distributor of Children's Motrin Suspension

9  products was a transparent attempt to avoid removal.  Plaintiffs will not be able to prove

10 that McKesson distributed the Children's Motrin they claim to have bought from Wal-

11 Mart.  Indeed, after a year of discovery, Plaintiffs have no evidence connecting

12 McKesson to the purchase they allegedly made.  Absent such evidence, there is no basis

13 for their claims against McKesson and this case properly belongs in federal court under

14 28 U.S.C. § 1441.  Removal was proper and Plaintiffs' improper joinder of McKesson

15 precludes remand. *See Attorneys Trust v. Videotape Computer Prod., Inc.*, 93 F.3d 593,

16 598 (9th Cir. 1996).  Plaintiffs' Motion to Remand should be denied.

17
## II.
## PROCEDURAL POSTURE
18 **A.    Plaintiffs' State Court Case**

19  On November 3, 2006, Plaintiffs filed a personal injury/wrongful death action in

20 the Superior Court of California, County of San Francisco, captioned *Thomas B. Gaines,*

21 *et al. v. Johnson & Johnson, et. al.*, Case Number CGC-06-457600.  Plaintiffs are

22 residents of North Carolina and seek damages for the personal injury and death Thomas

23 B. Gaines suffered after allegedly contracting Stevens-Johnson Syndrome, which

24 Plaintiffs claim was caused by Children's Motrin. (Complaint ¶¶ 12-14.)  Plaintiffs

25 allege causes of action for Strict Products Liability, Negligence, Breach of Warranty, and

26 Wrongful Death against Johnson & Johnson, a New Jersey corporation with its principal

27 place of business in New Jersey (Complaint ¶ 5), McNeil, a New Jersey corporation with

28 its principal place of business in Pennsylvania (Complaint ¶ 6), and Wal-Mart, a

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SFI\392964\1

1    Delaware corporation with its principal place of business in Arkansas (Complaint ¶ 8).

2    Plaintiffs' complaint asserts these same claims against McKesson, a Delaware

3    corporation with its principal place of business in San Francisco, California (Complaint ¶

4    7).

5        Plaintiffs claim that Thomas B. Gaines was given Children's Motrin on or around

6    September 28, 2004, and that it caused him to develop Stevens-Johnson Syndrome.

7    (Complaint ¶ 11, 15).  Plaintiffs now claim that the Children's Motrin at issue was

8    purchased at a particular Wal-Mart Store ("Store 1209") about March 2004, and that

9    McKesson distributed the Children's Motrin to this Wal-Mart Store.  On January 3, 2007,

10    Defendants served discovery seeking the factual basis on which Plaintiffs base their claim

11    that McKesson distributed the Children's Motrin at issue.  (See Defendants First Set of

12    Special Interrogatories, Form Interrogatories, Requests for Admission, and Requests for

13    Production of Documents attached as Exhibit B to the Declaration of Thomas W.

14    Pulliam, filed in support of removal ("Pulliam Dec.").)  Plaintiffs served deficient

15    responses to this discovery on February 12, 2007, and Defendants filed a motion to

16    compel adequate responses on March 29, 2007.  (*Id.*)

17        Prior to the hearing on Defendants' motion to compel, Plaintiffs provided

18    supplemental discovery responses on May 3, 2007.  In these supplemental discovery

19    responses, Plaintiffs asserted, without further explanation, that three news articles

20    provided the basis for their claim that McKesson distributed Children's Motrin to Wal-

21    Mart Store 1209.  One article, from April 2002, stated that McKesson was honored as one

22    of Wal-Mart's "Suppliers of the Year."  (Pulliam Dec. ¶12, Ex. H.)  Two November 2006

23    articles stated McKesson had renewed an agreement to be Wal-Mart's primary, but not

24    exclusive, supplier of "branded pharmaceutical products," and that the relationship

25    between McKesson and Wal-Mart began in 1988.  (*Id.*)  However, the articles provided

26    no evidence that McKesson sold any *Children's Motrin* to Wal-Mart generally, or Store

27    1209 in particular, during the relevant time.  (*Id.*)

28        On or about August 6, 2007, McKesson and Wal-Mart confirmed that, during the

1    period of January 1, 2004 through September 28, 2004, McKesson had not distributed

2    any Children's Motrin to Wal-Mart Store 1209, where Plaintiffs had purchased the

3    Children's Motrin at issue.  (McKesson's Response to Plaintiffs' Special Interrogatory

4    No. 1, attached to Pulliam Dec. as Ex. F; Wal-Mart's Response to Plaintiffs' Special

5    Interrogatory No. 1, attached to Pulliam Dec. as Ex. G.)

6         Thereafter, on October 5, 2007, Beverly Taylor, the Wal-Mart Pharmacy Manager

7    for the pharmacy at Wal-Mart Store 1209, signed a declaration ("Taylor Declaration") in

8    which she confirmed that it is "extremely unlikely" that any Children's Motrin

9    suspension product purchased before January 2004, from McKesson or anyone else,

10   would have still been on the shelf and available for sale at Store 1209 in March 2004.

11   Defendants received the Taylor Declaration on October 9, 2007.  (Pulliam Dec. ¶ 13.)

12   **B.    Defendants' Removal**

13        Taken together, confirmation by McKesson and Wal-Mart that McKesson did not

14   distribute Children's Motrin to Wal-Mart Store 1209 between January 1, 2004 and

15   September 28, 2004 and the Taylor Declaration, demonstrate that there was no possibility

16   that Plaintiffs could prove it was more likely than not the Children's Motrin at issue came

17   from McKesson.  Accordingly, on October 29, 2007, twenty days after receiving the

18   Taylor Declaration, Defendants removed Plaintiffs' case to the United States District

19   Court, Northern District of California (San Francisco Division), pursuant to 28 U.S.C. §

20   1441.

21        Under § 1441(b), the district court may exercise jurisdiction on the basis of

22   diversity if "none of the parties in interest *properly joined* and served as defendants is a

23   citizen of the state in which such action is brought." 28 U.S.C. § 1441(b) (emphasis

24   added); *see also* 28 U.S.C. § 1332(a).  Although McKesson is a California defendant,

25   Defendants established in their Notice of Removal that Plaintiffs fraudulently joined

26   McKesson, as there is no possibility that Plaintiffs can prove it is more likely than not

27   that the Children's Motrin they purchased came from McKesson.  (Notice of Removal at

28   5-6; *Adams v. FedEx Corp.*, 2005 U.S. Dist. Lexis 40408, *7 (N.D. Cal. 2005).)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.
### LEGAL ARGUMENT

**A.    Defendants' Removal Was Timely**

Pursuant to 28 U.S.C. § 1446(b), a notice of removal must "be filed within thirty days after the receipt by the defendant…of a copy of the initial pleading setting forth the claim or relief upon which such action or proceeding is based[.]"  However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant…of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]"  28 § U.S.C. § 1446(b).  Additionally, Section 1446(b) requires that any case to be removed on diversity grounds be removed within one year after the commencement of the action.  *Id.*

Thus, 28 U.S.C. § 1446(b) "provides two thirty-day windows during which a case may be removed – during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendants receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'"  *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689, 692 (9th Cir. 2005), quoting 28 U.S.C. § 1446(b).  Therefore, "even if a case were not removable at the outset, if it is rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed 'paper,' then the second thirty-day window is in play."  *Id.* at 694.

Importantly, "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."  *Id.; see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) ("we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove.").

Here, the Complaint disclosed no basis for removal because Plaintiffs alleged,

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

1  *inter alia,* that the Children's Motrin at issue was "designed, manufactured, marketed,

2  distributed and sold OTC by" McKesson. (Complaint ¶ 15.) Accordingly, the "first

3  thirty-day window" for removal did not exist here. In January 2007, Defendants' counsel

4  began seeking information from both Plaintiffs and Defendants themselves to determine

5  whether the case was removable based on the fraudulent joinder of McKesson.

6  Defendants learned through discovery that Plaintiffs purchased the Children's Motrin

7  from Wal-Mart Store 1209 in approximately March 2004, but that McKesson had not

8  distributed any Children's Motrin to Store 1209 at any point in 2004 prior to September

9  28. Further, Defendants learned that the only information Plaintiffs relied upon to

10  support their claim against McKesson was three news articles that stated McKesson was

11  a primary supplier of "branded pharmaceutical products" to Wal-Mart, and that the

12  relationship between McKesson and Wal-Mart began in 1988. The articles provided no

13  indication that McKesson sold any *Children's Motrin* to Wal-Mart generally, or Store

14  1209 in particular, during the year 2004.

15      Not until October 9, 2007, upon receipt of the Taylor Declaration, stating it is

16  "extremely unlikely" that any Children's Motrin purchased by Store 1209 before January

17  2004 would have still been on the shelves and available for sale in March 2004, were

18  Defendants able to determine that there was no possibility that Plaintiffs could establish a

19  cause of action against McKesson. Thus, the "second thirty-day window" for removal

20  opened on October 9, 2007. Prior to receiving the Taylor Declaration, Defendants could

21  only be sure that any Children's Motrin supplied to Wal-Mart Store 1209 in 2004 (before

22  September 28) was not supplied by McKesson. However, Defendants *could not* be sure

23  that the Children's Motrin Plaintiffs purchased was not supplied by McKesson prior to

24  January 1, 2004, still on the shelf available for sale in March 2004 until receipt of the

25  Taylor Declaration.

26      Prior to receiving the Taylor Declaration, the case was not removable. Once

27  Defendants received the declaration, it became removable based on McKesson's

28  fraudulent joinder. Prior to receipt of the Taylor Declaration, it could not be concluded

1   that there was "no possibility" that Plaintiffs could establish a cause of action against

2   McKesson because it was unclear whether Children's Motrin supplied by McKesson to

3   Wal-Mart Store 1209 prior to 2004 might still have been on the shelf and available for

4   sale in March 2004.[1]  The Taylor Declaration received October 9, 2007 foreclosed any

5   possibility that Plaintiffs could establish that it was more likely than not that the

6   Children's Motrin at issue came from McKesson, and thus the second thirty-day window

7   for removal was triggered.  Defendants timely removed the case twenty days later on

8   October 29, 2007.

9          Plaintiffs' reliance on *Rico-Chinn v. Prudential Ins. Co. of Am.*, 2005 U.S. Dist.

10  Lexis 23132 (N.D. Cal. 2005), for the proposition that Defendants cannot "receive" the

11  Taylor Declaration within the meaning of 28 § U.S.C. § 1446(b), is misplaced.  In *Rico-*

12  *Chinn*, the complaint did not reveal the amount of damages plaintiff-insured sought and

13  defendant-insurer waited to remove the case until receiving discovery responses from

14  plaintiff which revealed the damages exceeded the jurisdictional amount.  Plaintiff argued

15  that defendant had 30 days from the date the complaint was filed to remove the case

16  because defendant's own records, *in existence before the lawsuit was filed*, contained the

17  information necessary to determine the amount in controversy, and that those pre-existing

18  records constituted "other paper" within the meaning of Section 1446(b).  The court

19  rejected plaintiff's argument and denied remand, holding that "defendant was not in

20  'receipt' of an 'other paper' by reason of its possession of its own records," which existed

21  prior to the lawsuit and were created for purposes unrelated to the lawsuit.  *Id.* at *9.

22  Here, the Taylor Declaration was not in existence when Plaintiffs filed their lawsuit; the

23  declaration was not signed until October 5, 2007.  Moreover, the Taylor Declaration was

24

25          [1]Plaintiffs argue that Defendants' receipt of Plaintiffs' three news articles and/or McKesson's and
26  Wal-Mart's discovery responses, which confirmed that no Children's Motrin was distributed by
    McKesson to Wal-Mart Store 1209 in 2004, triggered the second 30-day removal window.  (Removal at
27  8.)  This argument is meritless.  The articles themselves have nothing to do with distribution of this
    product to this store.  And, the Taylor Declaration was needed to establish that there was no possibility
28  Plaintiffs could establish a cause of action against McKesson.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

1  prepared for the sole purpose of this litigation, and was not part of Defendants' business

2  records.

3        Accordingly, as the Defendants removed the case within 30 days after receiving

4  the Taylor Declaration, the removal was timely.

5  **B.    Remand Is Not Warranted Because Plaintiffs Fraudulently Joined McKesson**

6        **1.    Controlling Legal Standards**

7        Under 28 U.S.C. § 1441(a), a civil action brought in a state court over which a

8  federal court has original jurisdiction may be removed by a defendant to the appropriate

9  district court.  Section 1441(b), however, imposes a limitation on actions removed based

10  on diversity jurisdiction.  As noted, under Section 1441(b), removal is appropriate "if

11  none of the parties in interest *properly joined* and served as defendants is a citizen of the

12  State in which such action is brought."  28 U.S.C. § 1441(b) (emphasis added).  Known

13  as the "forum defendant rule," the Rule "reflects the belief that [federal] diversity

14  jurisdiction is unnecessary because there is less reason to fear state court prejudice

15  against the defendants if one or more of them is from the forum state."  *Spencer v. United*

16  *States Dist. Court for the N. Dist. of California*, 393 F.3d 867, 870 (9th Cir. 2004),

17  *quoting* Erwin Chemerinsky, *Federal Jurisdiction* § 5.5, at 345 (4th ed. 2003).

18        Because the Rule is procedural – not jurisdictional – it is inapplicable when a

19  forum defendant is fraudulently or otherwise improperly joined.  *Lively v. Wild Oats*

20  *Markets, Inc.,* 456 F.3d 933, 936 (9th Cir. 2006).  Joinder is fraudulent where the

21  defendant has "no real connection [to] the controversy" because the allegations against

22  the defendant are *"without any reasonable basis in fact."  Maffei v. Allstate California*

23  *Ins. Co.*, 412 F.Supp.2d 1049, 1053 (E.D. Cal. 2006), citing *Wilson v. Republic Iron &*

24  *Steel Co.*, 257 U.S. 92, 97 (1921) (emphasis added).  Stated another way, "[i]f the

25  plaintiff fails to state a cause of action against a resident defendant, and the failure is

26  obvious according to the settled rules of the state, the joinder of the resident defendant is

27  fraudulent and may be disregarded."  *McCabe v. Gen. Goods Corp.*, 811 F.2d 1336, 1339

28  (9th Cir. 1987).  In determining whether joinder was fraudulent, a court "must examine

1    whether there is any possibility that the plaintiff will be able to establish a cause of action

2    against the party in question." *Adams, supra,* 2005 U.S. Dist. Lexis 40408 at *7.

3        When examining whether a defendant is fraudulently joined, "[t]he court may

4    pierce the pleadings, consider the entire record, and determine the basis of joinder by any

5    means  available." *Maffei,* 412 F.Supp.2d at 1053 (citations omitted); *see also Griggs v.*

6    *State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir. 1999) ("A federal court may consider

7    'summary judgment-type evidence such as affidavits and deposition testimony' when

8    reviewing a fraudulent joinder claim").  However, it is well settled in the Ninth Circuit

9    that the "propriety of removal is determined at the time of removal – not according to

10    factual assertions stated at a later date." *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313,

11    1318 (9th Cir. 1998).  To that end, while a fraudulent joinder claim may be resolved by

12    piercing the pleadings, "whether or not a plaintiff may recover on the stated claims

13    against the resident defendants does *not* include consideration of whether, with further

14    discovery, the plaintiff may uncover a factual basis for its claims[.]" *Bellecci v. GTE*

15    *Sprint Communications Corp.*, 2003 U.S. Dist. Lexis 640, *10 (N.D. Cal. 2003) (original

16    emphasis).

17        Thus, a defendant "is entitled to present the facts showing the joinder to be

18    fraudulent," and if the facts reveal that joinder is fraudulent, the defendant may be

19    dismissed from the action under Fed. R. Civ. P. 21.[2]  Removing Defendants did exactly

20    that.

21        **2.    Defendants Met Their Removal Burden By Establishing That**
        **McKesson Has No Connection To Plaintiffs' Controversy**

22

23        To hold a defendant liable for injury caused by a particular product, "there must

24    first be proof that the defendant produced, manufactured, sold, or was in some way

25    responsible for the product." *Garcia v. Joseph Vince Co.*, 84 Cal.App.3d 868, 874

26

27        [2] Under Fed. R. Civ. P. 21, "[p]arties may be dropped or added by order of the Court on motion
    of any party...at any stage of the action and on such terms as are just." *Gasnick v. State Farm Ins. Co.*,

28    825 F.Supp. 245, 248-249 (E.D. Cal. 1992).

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\392964\1    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND    CASE NO. CV 07-05503 PJH

1    (1978). Here, no such proof exists and the undisputed evidence demonstrates that there is

2    no possibility that Plaintiffs can establish that it was more likely than not that McKesson

3    was "in some way responsible" for the Children's Motrin at issue.

4         Plaintiffs' claim that the Taylor Declaration raised a disputed fact for the State

5    Court to resolve because the declaration only states the Children's Motrin was purchased

6    from Johnson & Johnson, but it does not state that McKesson did not distribute it.

7    (Plaintiffs' Motion to Remand ("Remand") at 13.)  Plaintiffs ignore the other evidence

8    supporting removal.  The Taylor Declaration is not directed to whether McKesson

9    distributed Children's Motrin in 2004.  That issue was resolved by McKesson's and Wal-

10   Mart's discovery responses – these responses unequivocally stated McKesson did not

11   distribute any Children's Motrin to Wal-Mart Store 1209 in 2004 (before September 28).

12   (McKesson's and Wal-Mart's Responses to Plaintiffs' Special Interrogatory No. 1,

13   attached to Pulliam Dec. as Exs. F and G.)  The significance of the Taylor Declaration is

14   Ms. Taylor's attestation that it is "extremely unlikely" that any Children's Motrin

15   purchased by Wal-Mart Store 1209 before 2004 would have been on the shelves and

16   available for sale in March 2004, when Plaintiffs allegedly purchased the Children's

17   Motrin at issue.  Together, the declaration and the discovery responses of McKesson and

18   Wal-Mart create an *undisputed* fact that the Children's Motrin at issue did not come from

19   McKesson.  Plaintiffs' only evidence – the three news articles – do not create a disputed

20   fact because none of the articles state that McKesson distributed Children's Motrin to

21   Wal-Mart Store 1209 in 2004 before the Plaintiffs allegedly purchased the Children's

22   Motrin at issue.

23        Plaintiffs also argue that the Taylor Declaration does not establish that there is no

24   possibility for recovery against McKesson because it "fails to account for the possibility

25   that Plaintiffs could have purchased the Children's Motrin in April, five months before

26   September 2004." (Remand at 18.)  To the extent Plaintiffs are insinuating that the

27   Children's Motrin at issue may have been purchased later than March 2004, the argument

28   is illogical and untenable.  If it is "extremely unlikely" that Children's Motrin purchased

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\392964\1    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND          CASE NO. CV 07-05503 PJH

1   by Wal-Mart Store 1209 prior to January 2004 would have still been on the shelf in

2   March 2004, it would be even *more* unlikely to be on the shelf in April 2004 or later.

3        Plaintiffs claim to have purchased the Children's Motrin at issue in March 2004

4   from Wal-Mart Store 1209, but the undeniable evidence establishes (1) Store 1209 did

5   not receive any Children's Motrin from McKesson in 2004, and (2) it would be extremely

6   unlikely that any Children's Motrin received from McKesson before 2004 would still be

7   on the shelf and available for sale in Store 1209 in March 2004. The allegations against

8   McKesson are, thus, "without any reasonable basis in fact." *Maffei, supra,* 412 F.Supp.2d

9   at 1053. There is no possibility that Plaintiffs can prove more likely than not the

10  Children's Motrin they purchased came from McKesson. The Court should disregard the

11  citizenship of McKesson and deny Plaintiffs' Motion to Remand.

## IV.
## CONCLUSION

13       Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand.

16  Dated: December 2(, 2007

     Respectfully submitted,

     DRINKER BIDDLE & REATH LLP

     *Thomas W. Pulliam Jr.*

     THOMAS W. PULLIAM, JR.

     Attorneys for Defendants
     JOHNSON & JOHNSON, MCNEIL
     CONSUMER HEALTHCARE, a Division
     of MCNEIL-PPC, INC., MCKESSON
     CORPORATION, and WAL-MART
     STORES, INC.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SFI\392964\1

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

10

CASE NO. CV 07-05503 PJH