1    GREENE BROILLET & WHEELER, LLP
     LAWYERS
     BROWNE GREENE, STATE BAR NO. 38441
2    ALAN VAN GELDER, STATE BAR NO. 221820
     100 WILSHIRE BOULEVARD, SUITE 2100
     P.O. BOX 2131
3    SANTA MONICA, CALIFORNIA 90407-2131
     TEL. (310) 576-1200
     FAX. (310) 576-1220
4

     LAW OFFICES OF BRIAN D. WITZER, INC.
5    BRIAN D. WITZER, ESQ., STATE BAR NO. 123277
     ANDREW J. SPEILBERGER, ESQ., STATE BAR NO. 120231
     DANIEL BALABAN, ESQ., STATE BAR NO. 243652
6    WITZER LAW BUILDING
     8752 HOLLOWAY DRIVE
     WEST HOLLYWOOD, CALIFORNIA 90069-2327
7    TEL. (310) 777-5999
     FAX. (310) 777-5988

8    Attorneys for ____ Plaintiffs _____

                                    (SPACE BELOW FOR FILING STAMP ONLY)

9

10                   UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

14   THOMAS B. GAINES, a deceased minor    )   CASE NO.  3:07-cv-05503.PJH
     child by and through his personal      )   (formerly CGC -06-457600)
15   representative(s) and/or successor(s) in )
     interest; DIANA L. GAINES, individually, as )
16   Executor of the Estate of Thomas B. Gaines, )   PLAINTIFFS' REPLY IN SUPPORT
     and as Thomas B. Gaines' personal      )   OF PLAINTIFF'S MOTION FOR
17   representative and successor in interest; )   REMAND; MEMORANDUM OF
     GARY D. GAINES, as individually and as  )   POINTS AND AUTHORITIES
18   Thomas B. Gaines' personal representative )
     and successor of interest; and THE ESTATE )
19   OF THOMAS B. GAINES,                   )   Date:  January 16, 2008
                                            )   Time:  9:00 a.m
20                            Plaintiffs,    )   Location:  Courtroom 3
                                            )
21                    vs.                    )   Complaint Filed: November 3, 2006
                                            )
22   JOHNSON & JOHNSON, a New Jersey        )
     corporation; MCNEIL CONSUMER &         )
23   SPECIALTY PHARMACEUTICALS, a           )
     Division of MCNEIL-PPC, INC., a New    )
24   Jersey corporation; MCKESSON          )
     CORPORATION, a Delaware corporation;  )
25   WAL-MART STORES, INC., a Delaware      )
     corporation; and DOES 1 through 100,  )
26   inclusive,                            )
                                            )
27                         Defendants.      )
                                            )
28

179E.DE

1    TO THE COURT AND ALL PARTIES:

2        Plaintiffs hereby submit the following Reply in Support of Plaintiffs'

3    Motion for Remand.

4

5    DATED: January 2, 2008          GREENE BROILLET & WHEELER, LLP

6

7                                    Browne Greene
8                                    Mark Quigley
                                     Alan Van Gelder
9                                    Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.DE

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

### I. INTRODUCTION

4

5    Defendants' Opposition to Plaintiff's Motion to Remand only

6  highlights the improper nature of Defendants' removal.  Defendants offer no

7  explanation for why they waited so long to attempt to remove and then provide no

8  explanation for why they cannot show there is no possibility of success against

9  McKesson.  In fact the Opposition all but admits that there is a viable cause of

10  action against McKesson, that McKesson is not a sham Defendant, and this matter

11  belongs in State Court.  Defendants state in their Opposition at Page 6:2-4,

12  **"Children's Motrin [was] supplied by McKesson  to Wal-Mart Store 1209**

13  **prior to 2004"** and that **"it might still have been on the shelf available for sale in**

14  **March of 2004."**  Yet Defendants then argue that there is something in the

15  Declaration of Taylor that conclusively proves that it was impossible for Defendant

16  McKesson to be liable for Plaintiff's death.  As set out in Plaintiffs' Motion for

17  Remand and below, Defendants Removal and their Opposition fell far short of the

18  heavy burden it must overcome in arguing that McKesson is a sham Defendant.

19

20    ## II. DEFENDANTS FAIL TO REFUTE THE UNTIMELINESS OF

21    ## THEIR NOTICE OF REMOVAL

22    Defendants argue that their Notice of Removal, filed on October 30,

23  2007, mere days before the one-year expiration of the time in which a case may be

24  removed under Section 1446(b), was timely because Defendants were not on notice

25  of the removability of the action until Defendants "received" a declaration from one

26  of its employees on October 9, 2007. "Prior to receiving the Taylor Declaration, the

27  case was not removable." (Defendants' Opp., p. 5.)  However, Defendants' position

28  is undermined by the fact that the "facts" Defendants rely upon and cite in support

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.DE

of removability consist of discovery responses that were disclosed *months prior to removal*. Defendants' position that they first became aware of the removability of the action when they "received" the declaration from their own employee is disingenuous.

Section 1446(b) provides that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained* that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (emphasis added). While Plaintiff continues to maintain that Defendants cannot "receive" their own employee's Declaration for purposes of Section 1446(b), as such an interpretation would be an improper manipulation of the statute, even assuming Defendants could rely on the Declaration Defendants' removal is nonetheless untimely. Defendants were on notice of the facts they now rely upon to support removal months prior to removal.

Since the beginning of this lawsuit, Defendants have argued that McKesson was not a proper defendant and have conducted discovery to try to support removal. Defendants even filed a Motion to Compel further discovery responses to obtain what they argued was necessary information as to whether McKesson is a proper party. (See Ex. B to the Pulliam Decl., Defendants' Memo of P's & A's in support of motion to compel, p. 3.) After Plaintiff produced further responses, Defendants took their Motion off calendar, presumably because they received the necessary information they were seeking. While no removal was filed based on these responses, Defendants now cite the responses in support of their claim that the action is removable. Similarly, Defendants repeatedly cite to discovery responses from Wal-Mart to McKesson, dated August 7, 2007, to support removability. (See Defendants' Opp., p. 9-10.) Again, no notice of removal was filed based on these responses.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1        "[T]he removal statutes were drafted to place upon removing

2 defendants the *onus of acting swiftly* to ascertain the facts necessary to support

3 removal." <u>Enriquez v. FMC Corp., Airline Equip. Div.</u> (D. Cal. 1992) 1992 U.S.

4 Dist. LEXIS 13583, *6-7. Defendants were on notice of the facts they now claim

5 support removability *for months prior to removal.* To accept Defendants argument

6 that it did not "first ascertain" the removability of the action until receipt of their

7 own employee's eleventh-hour declaration, would make a mockery of the spirit and

8 purpose of Section 1446(b).

9        Moreover, missing from their Opposition is any explanation as to why

10 it took Defendants eleven months to obtain this purportedly critical declaration

11 from Defendants' own employee. As of February, 2007, when Plaintiffs produced

12 discovery responses providing the specific address of the Wal-Mart where the

13 Children's Motrin was purchased, Defendants were on notice of the specific store

14 location and could then obtain the purportedly critical declaration. It is worth

15 repeating that Defendants are all represented by the *same counsel* and *jointly*

16 *defending* the action. It also cannot be ignored how close to the Summary

17 Judgment deadline and trial date, Defendants waited before filing the removal.

18        As Defendants' Notice of Removal, filed days shy of the one-year

19 expiration of time in which a defendant can remove an action was untimely, the

20 matter should be remanded.

21 **III. DEFENDANTS' REMOVAL FAILS TO MEET THE**

22        **HEAVY BURDEN ASSOCIATED WITH FRAUDULENT**

23        **JOINDER**

24        Aside from being an untimely removal, and aside from being a

25 meritless removal, **Defendants' own opposition to Plaintiff's remand dooms**

26 **Defendants' efforts to improperly remove this case to Federal Court.**

27        The standard for determining whether a defendant has been

28 fraudulently joined is not whether plaintiffs will actually or even probably prevail

179E.DE

1  on the merits, *but whether there is any possibility that they may do so.* <u>Levine v.</u>

2  <u>Allmerica Financial Life Ins. & Annuity Co.</u> (C.D. Cal. 1999) 41 F.Supp. 2d 1077,

3  1078; see also <u>Adams v. FedEx Corp.</u> (D. Cal. 2005) 2005 U.S. Dist. LEXIS 40408

4  *7. A court determining whether joinder is fraudulent must examine whether there

5  is any possibility that the plaintiff will be able to establish a cause of action against

6  the party in question. <u>Bellecci v. GTE Sprint Communs. Corp.</u> (N.D. Cal. 2003)

7  2003 U.S. Dist. LEXIS 649, *9-10. There is a *strong presumption against a finding*

8  *of fraudulent joinder*, and the removing defendant bears a heavy burden of

9  persuasion to justify such a finding. <u>Emrich v. Touche Ross & Co.</u> (9th Cir. 1998)

10  846 F.2d 1190, 1193-1995. A defendant will be deemed to be fraudulently joined

11  only if "after all disputed questions of fact and all ambiguities in the controlling

12  state law are resolved in the plaintiff's favor, the plaintiff could not possibly

13  recover against the party whose joinder is questioned." <u>Id.</u> (quoting <u>Soo v. UPS</u>

14  (N.D. Cal. 1999) 73 F.Supp. 2d 1126, 1128). In finding a sham defendant, it should

15  be "readily apparent" that the defendant was fraudulently joined. <u>United Computer</u>

16  <u>Systems, Inc. v. AT&T Corp.</u> (9th Cir. 2002) 298 F.3d 756, 762.

17  　　　　On Page 5:26-6:4 of Defendants' Opposition papers Defendants make

18  a series of stunning and inconsistent admissions regarding the culpability of

19  McKesson in this litigation. Defendants state that at 6:2-4, **"Children's Motrin**

20  **[was] supplied by McKesson to Wal-Mart Store 1209 prior to 2004"** and that

21  **"it might still have been on the shelf available for sale in March of 2004."**

22  These statements and admissions by themselves demonstrate that Plaintiff has a

23  probability of success against McKesson and that McKesson is not a sham

24  Defendant. **Defendants' own Opposition puts McKesson Children's Motrin on**

25  **the shelves of the Subject Walmart prior to the Plaintiffs' purchase of the**

26  **Children's Motrin and fails to eliminate the possibility that such Children's**

27  **Motrin was purchased by the Plaintiff.**

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1    In fact, Defendants even acknowledge that absent the Taylor

2  Declaration Defendants cannot conclude that "there was no possibility that

3  Plaintiffs could establish a cause of action against McKesson." (Opposition Page

4  5:28-2.). In betting the "entire house" on the Taylor Declaration Defendants argue

5  that "prior to receiving the Taylor Declaration, **the case was not removable**."

6  Opposition 5:26. As such, Defendants' entire removal appears to now rest

7  exclusively on the Taylor Declaration. However as discussed below and in

8  Plaintiff's original motion the Taylor Declaration is woefully inadequate to support

9  removal.

10    The Taylor Declaration does not meet the "no possibility of success

11  standard" set out by Levine v. Allmerica Financial Life Ins. & Annuity Co. (C.D.

12  Cal. 1999) 41 F.Supp. 2d 1077, 1078 et al. Defendants even acknowledge as much

13  in their own motion writing that the Taylor declaration prevents Plaintiff from

14  proving, "it was more likely than not that the Children's Motrin at issue came from

15  McKesson.." (Opposition at 6:4-6). More likely than not, or fifty one percent is

16  not enough to claim fraudulent joinder, Defendants through Taylor had to show "no

17  possibility of success." Taylor's Declaration does not even come close.

18    In Plaintiffs Motion for Remand the Plaintiffs explained all of the

19  things that were wrong with the Taylor Declaration and the McKesson interrogatory

20  responses. Defendants' Opposition does nothing to address these problems.

21    The Declaration of Taylor comes up with the unsupported opinion that

22  it is "extremely unlikely" that in March of 2004, McKesson Children's Motrin was

23  on the shelves of the Subject Walmart. First, the standard for a sham Defendant is

24  "no possibility." The nebulous term "extremely unlikely" chosen by the Defendants

25  is not synonymous for impossible or no possibility. "Extremely unlikely" does not

26  meet the standard of sham pleading. Secondly, it is telling that while Defense

27  counsel argues in its papers that there is no possibility of success, Ms. Taylor

28  refused to commit to such language under oath and under penalty of perjury. There

179E.DE

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1    is a *strong presumption against a finding of fraudulent joinder*, and the removing

2    defendant bears a heavy burden of persuasion to justify such a finding. Emrich v.

3    Touche Ross & Co. (9th Cir. 1998) 846 F.2d 1190, 1193-1995. Arguing that there

4    is no possibility of success was not enough, Defendants had to prove it, and Ms.

5    Taylor does not provide the evidence Defendants need.

6                Even more fatal to the Taylor Declaration is the fact that it is limited to

7    March of 2004. See Taylor Declaration at Paragraph 3. Ms. Taylor does not say

8    that it is extremely unlikely that Children's Motrin purchased in February or

9    January of 2004 did not come from McKesson. Plaintiffs' interrogatory responses

10   indicate that they believed that the Children's Motrin responses were purchased

11   **approximately** six months before Thomas Gaines' death. It is quite possible that

12   the Children's Motrin could have been purchased in February 2004, January 2004,

13   or even December 2003. NONE of the evidence submitted by the Defendants

14   eliminates the possibility, or even makes it "extremely unlikely" that McKesson

15   Motrin was not on the shelves in January 2004 or February 2004. (Defendants have

16   already admitted that McKesson Children's Motrin was on the shelves in December

17   of 2003).

18               Thus, even if Ms. Taylor's Declaration was admissible, which it is not,

19   the Declaration is too narrow to support a sham pleading claim. Plaintiff objects to

20   the Taylor Declaration in that no foundation is laid for Taylor to explain how or

21   why she knows where the Children's Motrin came from and how long it lasts on the

22   shelves. Ms. Taylor does not indicate how long on average Children Motrin

23   products are on the shelves at her store, or what facts, documents, data, and

24   experience, she relies on determining whatever this turn over rate is. Furthermore,

25   she does not reveal if she in determining Children's Motrin turn over tracked

26   McKesson vs. Non-McKesson turn over. Her inability to even conduct such

27   calculations is why she cannot even state under penalty of perjury that there is no

28

-8-
Plaintiffs' Reply in Support of Remand

179E.DE

1  possible way McKesson Children's Motrin was on the shelves in March of 2004.

2  The Declaration just amounts to a giant "maybe."

3          Neither the Taylor Declaration or the Defendants' discovery responses

4  (which Defendants themselves claim were inadequate) state conclusively that

5  McKesson was not involved in the distribution of Children's Motrin to Walmart

6  and the Subject Walmart in 2004.  There is NOTHING from McKesson that states

7  that there is no possible way that Children's Motrin distributed by McKesson did

8  not ultimately appear on the shelves in the Subject Walmart in 2004.  Defendants'

9  discovery responses and attached papers create an inference that Defendants are

10  evasively answering the questions to create the false impression that McKesson had

11  absolutely no involvement in the distribution chain of Children's Motrin to the

12  Subject Walmart.  Assuming for a moment that McKesson did not ship the

13  Children's Motrin DIRECTLY to the Walmart at issue, NONE of the evidence

14  provided by the Defendants indicates that McKesson was not a part of the

15  distribution chain that brought the Motrin to the Walmart at issue.  If McKesson

16  provided the Motrin to an agent of Walmart or a third party for the ultimate purpose

17  of providing it to the Walmart at issue, McKesson is still in the chain of distribution

18  and still liable.  It is quite telling that there is no Declaration form any McKesson

19  employee that states there is no possible way that any Children's Motrin distributed

20  by McKesson could have found its way on to a store shelf of the Subject Walmart

21  in 2003 or 2004.  Furthermore there is no Declaration from the entity that

22  supposedly distributed the Children's Motrin to Walmart in place of McKesson.

23  McNeil and Johnson and Johnson did not offer any evidence as to who in place of

24  McKesson conclusively provided Motrin to the Subject Walmart.  The Defendants

25  have the burden of eliminating all doubt as to whether McKesson could have been

26  responsible for the Children's Motrin.  The evidence falls well short of the mark.

27          In Taylor's Declaration at Paragraph 2, she claims the Motrin in 2004

28  came from Johnson and Johnson.  However there is no evidence produced by

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

179E.DE

-9-

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1   Defendants that Defendant Johnson and Johnson actually makes and distributes

2   Children's Motrin. (Which calls into question a portion of the Taylor Declaration).

3   Attached as Exhibits 1 and 2 to the Declaration of Alan Van Gelder in Support of

4   Plaintiff's Motion for Remand are printouts from Johnson and Johnson's own

5   website. As set out by the website in Exhibit 1, Johnson and Johnson does not

6   actually sell Children's Motrin, that responsibility is left to subsidiaries such as

7   Defendant McNeil. As described in Exhibit 2, Johnson and Johnson leaves the

8   actual selling to its subsidiaries as part of its system of decentralized management.

9   In fact in other pending litigation, Johnson and Johnson and the VERY lawyers

10  who filed Defendants Removal have argued that the selling and distribution of

11  Children's Motrin is not handled by Johnson and Johnson. Such allegations call

12  into question the validity of the Taylor Declaration.[1]

13          While the defendant seeking removal to federal court is entitled to

14  present the facts showing the joinder to be fraudulent, merely showing that an

15  action is likely to be dismissed as against the purported "sham" defendant does not

16  demonstrate fraudulent joinder. Diaz v. Allstate Insurance Group (C.D. Cal. 1998)

17  185 F.R.D. 581, 586. Again, the standard is not whether plaintiffs will actually or

18  even probably prevail on the merits, but whether there is *any possibility* that they

19  may do so.

20  _____

21      [1]Plaintiff's Counsel currently also represents Sabrina Johnson in pending litigation in Los
    Angeles Superior Court Sabrina Johnson v. Johnson and Johnson et al. ( TC018540). Sabrina much
22  like Thomas was also severely injured by Children's Motrin. The Court recently denied Defendants'
23  Motion for Summary Judgment finding triable issues of fact concerning the role Children's Motrin
    had in injuring Sabrina Johnson. Defense Counsel in this matter is also Defense Counsel in the
24  Sabrina Johnson matter. The very Defense Counsel in this case has repeatedly claimed, argued, and
25  represented during discovery disputes and meet and confers that Defendant Johnson and Johnson does
26  not directly make, sell, or distribute Children's Motrin and knows little to nothing about the actual
    process. Such arguments and representations call into question the validity, foundation, and meaning
27  of Ms. Taylor's statements regarding the origin of the Children's Motrin. (See Declaration of Alan
28  Van Gelder in Support of Motion to Remand).

179E.DE

## IV. CONCLUSION

For the above reasons, Plaintiffs Motion for Remand should be granted and this matter should be remanded back to State Court.

DATED:  January 2, 2008          GREENE BROILLET & WHEELER, LLP

Browne Greene
Mark Quigley
Alan Van Gelder
Attorneys for Plaintiff

Plaintiffs' Reply in Support of Remand

PROOF OF SERVICE
(C.C.P. 1013A, 2015.5)

**STATE OF CALIFORNIA**

I am employed in the county of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 100 Wilshire Boulevard, 21st Floor, Santa Monica, California 90401.

On January 2, 2008, I served the foregoing document, described as

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in this action

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

___ by placing ___ the original ___ a true copy enclosed in sealed envelopes addressed as follows:

___ **BY MAIL.**
    ___ I deposited such envelope in the mail at Santa Monica, California. The envelope was mailed with postage thereon fully prepaid.

    ___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **January 2, 2008,** at Santa Monica, California.

**X** **BY PERSONAL SERVICE.** I delivered such envelope by hand to the offices of the addressee.

**X** **BY ELECTRONIC MAIL** to the addressee as set forth on the attached mailing list

___ **BY FACSIMILE.** I faxed a copy of the above-described document to the interested parties as set forth [above/on the attached mailing list].

Executed on **January 2, 2008,** at Santa Monica, California.

**X** **(Federal)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**Michelle Leslie**
**Name**                                      **Signature**

1

2

3
SERVICE LIST
*GAINES V. JOHNSON & JOHNSON*
4
Case No. CGC 06 457600

5

6
**BY PERSONAL SERVICE**
Charles E. Preuss, Esq.
Thomas W. Pulliam, Jr., Esq.
7
Cheryl A. Jorgensen, Esq.
Vernon Zvoleff, Esq.
8
**DRINKER BIDDLE & REATH, LLP**
50 Fremont St., 20th Fl.
9
San Francisco, CA 94105
(415) 591-7558
10
Fax: (415) 591-7510

Attorneys for Defendants **McNEIL CONSUMER HEALTHCARE, a division of McNEIL-PPC, INC. (erroneously sued as Mc NEIL CONSUMER AND SPECIALTY PHARMACEUTICALS, a Division of McNEIL-PPC, INC.) McKESSON CORPORATION, and WAL-MART STORES, INC.**

11

12
**BY EMAIL**
Brian D. Witzer, Esq.
Daniel Balaban, Esq.
13
**LAW OFFICES OF BRIAN D. WITZER, INC.**
14
Witzer Law Building
8752 Holloway Drive
15
West Hollywood, CA 90069
Tel: (310) 777-5999
16
Fax: (310) 777-5988

Attorneys for Plaintiffs
**ESTATE OF THOMAS B. GAINES
DIANA L. GAINES
GARY D. GAINES**

17

18

19

20

21

22

23

24

25

26

27

28